IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Steven Ramon Green, ) | |
| ) | Civil Action No. 8:07-1832-RBH-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Lt. Daniel Watson, and ) | |
| Jay Cox, Chief of the ) | |
| Darlington Police Dept., ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the Court on the defendants' motion for summary judgment (Docket Entry # 23).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on July 3, 2007, seeking damages for alleged civil rights violations. On January 23, 2008, the defendants filed a motion for summary judgment. On February 11, 2008, the plaintiff responded contending that summary judgment was premature as discovery had not been conducted. On May 6, 2008, the court ordered the plaintiff to file a response to the merits of the defendants' motion by May 23, 2008. The plaintiff did not file any response. On June 4, 2008, new counsel filed a notice

of appearance and the plaintiff filed a motion for an extension of time within which to respond to the defendants' summary judgment motion. (Docket Entries # 31 and 32.) The court granted the plaintiff's motion and the plaintiff was to file a response by June 24, 2008. As of the date of this report, the plaintiff has not filed any response to the defendants' summary judgment motion.

## **FACTS PRESENTED**

On June 3, 2006, the defendant Lieutenant Watson responded to a robbery alarm at the Sav-Way Food Store in Darlington. The store clerk told Lt. Watson that after being robbed, he and the robber engaged in a physical altercation just outside of the store's entrance. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A. - Lt. Watson's Aff. ¶ 5.) The clerk told Lt. Watson that he was able to view the robber's face, build, and clothing. (*Id.*)  Based upon the plaintiff's two prior convictions for robbery of the same store, Lt. Watson suspected that the perpetrator was the plaintiff. (*Id.*; Ex. H)  On June 5, 2006, Lt. Watson presented a photo line-up containing the plaintiff's photo to the store clerk and he immediately identified the plaintiff as the robber. (*Id.*)  On June 6, 2006, an arrest warrant was issued by Magistrate Daniel B. Causey.  (Defs.' Mem. Supp. Summ. J. Mot. Ex. C - Arrest Warrant.)   On June 4th, the plaintiff alleges his picture was aired on the local news as a suspect in the June 3rd Sav-Way robbery. (Compl. at 3.) Subsequently, on June 6th, the plaintiff turned himself in to the Darlington Police Department. (*Id*.)

On August 10, 2006, the plaintiff was indicted by the Darlington County Grand Jury for strong arm robbery. (Defs.' Mem. Supp. Summ. J. Mot. Ex. D.) On March 21, 2007, the plaintiff was found not guilty of the charge.

On December 29, 2006, Lt. Watson responded to a robbery call at the Kangaroo gas station in Darlington. Lt. Watson interviewed the store clerk who described the perpetrator. (Defs.' Mem. Supp. Summ. J. Mot. Ex. A - Lt. Watson's Aff. ¶ 9.) Based on the information obtained from the clerk and the similarities to the two robberies which the plaintiff had been convicted of in the past, Lt. Watson again suspected the plaintiff. (*Id.* ¶ 10.) Lt. Watson asked the clerk to pick out the perpetrator from a line-up of black and white photographs. (*Id.* ¶ 11 ) The clerk requested a line-up using color photographs and when shown a line-up of color photographs, she identified the plaintiff as the perpetrator. (*Id.* ¶ 12-13.) On December 29, 2006, Magistrate Daniel B. Causey issued an arrest warrant for the plaintiff. (*Id.* ¶ 14; Defs.' Mem. Supp. Summ. J. Mot. Ex. E.) On March 15, 2007, the plaintiff was indicted by the Darlington County Grand Jury on the charge of strong arm robbery. (*Id*. Ex. F.) On July 17, 2007, the plaintiff was found not guilty.

The plaintiff brought this action alleging that his Fourth Amendment rights were violated when he was arrested for the robberies. He also alleges defamation and harassment. (Compl. at 5.) He seeks to have Lt. Watson suspended without pay indefinitely and receive more training. He also seeks actual damages for pain and suffering. (Compl. at 5.)

**APPLICABLE LAW**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the

existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION[1]

Initially, the undersigned notes that as to any alleged claims against the defendant Jay Cox, Darlington Chief of Police, the plaintiff has failed to state a claim. It is well-established that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983. *See, e.g., Monell v. Department of Social Svs.*, 436 U.S. 658, 691-92 (1978). Aside from the caption in this case, the plaintiff does not make any allegations regarding the defendant Cox or even refer to him at all in the body of the complaint. Liberally construing the complaint, the plaintiff may be

---

[1] As noted above, the plaintiff has not responded to the defendants' summary judgment motion. Failure to respond to a motion for summary judgment supported by affidavits does not, however, automatically require the grant of the motion. *See Custer v. Pan American Life Insurance Co.*, 12 F.3d 410, 416 (4th Cir.1993). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to a judgment as a matter of law." *Id*. Therefore, even though the plaintiff has failed to respond to the motion for summary judgment, the court must still review the motion and the materials before it to determine if the defendants are entitled to summary judgment as a matter of law. *See id.*; *see also* Fed.R.Civ.P. 56(e) ( "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party .").

attempting to rely on the doctrine of supervisory liability as Cox is the Chief of Police. However, the plaintiff has failed to make any allegations of supervisory liability.

"Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (citation omitted). The plaintiff must demonstrate that the prisoner faces a pervasive and unreasonable risk of harm from some specified source, and that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Id. See also Moore v. Winebrenner,* 927 F.2d 1312 (4th Cir.1991); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). A "mere right to control" is not enough. *Monell*, 436 U.S. at 694 n. 58.

Officials must have personal knowledge of and involvement in the alleged deprivation of the plaintiff's right in order to be liable. Here, however, the plaintiff has not made any allegations that the defendant Cox had any personal knowledge of the plaintiff's arrests. Further, the plaintiff has not shown that any inaction on the part of Cox, in his capacity as supervisor, which would constitute deliberate indifference to or tacit authorization of the alleged denial the plaintiff's constitutional rights. Without any allegation of any involvement in the alleged assault whatsoever, the defendant Cox cannot be held liable under §1983. Accordingly, the defendant Cox should be dismissed.

**Plaintiff's Fourth Amendment Claim**

As stated above, the plaintiff alleges that his Fourth Amendment rights were violated when he was arrested for the robberies. The defendants contend that they should be granted summary judgment on this claim for several reasons, including that the plaintiff has failed to state a claim and the defendants are entitled to qualified immunity. The undersigned agrees.

The Fourth Circuit Court of Appeals has held that there is no independent cause of action for a § 1983 malicious prosecution claim, separate and distinct from a plaintiff's constitutional claims. *Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996)(holding allegations that an arrest made pursuant to a warrant not supported by probable cause states Fourth Amendment claim analogous to malicious prosecution). Rather, such a claim must be founded on a Fourth Amendment seizure. *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000).

"The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir.1996). Allegations that law enforcement officers seized a plaintiff "pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a . . . claim alleging a seizure that was violative of the Fourth Amendment." *Id*. at 183-84. Accordingly, the plaintiff must show that his arrest was without probable cause and the state criminal proceedings terminated in his favor. Here,

7

there is no dispute that the state criminal proceedings ended in the plaintiff's favor as he was found not guilt on both robbery charges. Therefore, the issue is whether the defendant Lt. Watson had probable cause to arrest the plaintiff.

Probable cause requires facts and circumstances sufficient to warrant a prudent person to believe that the suspect has committed or is committing a crime. *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998). To determine whether or not probable cause existed, a court must examine the "totality of the circumstances" known to the officers at the time of arrest. *United States v. Al-Talib*, 55 F.3d 923,931 (4th Cir. 1995). Allegations that an arrest violates state law does not state a claim unless there was no probable cause for the arrest. *Fisher v. Washington Metro. Area Transit Auth.*, 690 F.2d 1133, 1139 (4th Cir. 1982). Probable cause for a warrantless arrest is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Further, "[p]robable cause requires more than mere suspicion of wrongdoing, but requires much less evidence than needed to convict." *Walker v. Scott*, 2006 WL 1288315, at *6 (W.D.Va. 2006). Thus, "[t]he proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).

The fact that the plaintiff was not convicted does not mean that the defendant Lt. Watson did not have probable cause to arrest him.  Not everyone who is arrested but not convicted has a cause of action for violation of § 1983.  The Constitution does not guarantee that only the guilty will be arrested.  *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

Further, the question is not whether there was actually probable cause for the arrest, but whether an objective officer could reasonably have believed probable cause existed. *Gomez v. Atkins*, 296 F.3d 253, 261-262 (4th Cir. 2002). An officer is not liable where he could have reasonably believed there was probable cause for the arrest.  Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest. *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995).  If probable cause existed for any of the charges made, or if a reasonable police officer could believe probable cause existed, the false arrest claim fails. *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002). Furthermore, the issue also "is not whether [the officer] exhausted every potential avenue of investigation."  *Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000). *See Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991) ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause.").

First, the undersigned notes that arrest warrants were obtained through a magistrate.  Additionally, the undersigned notes that the grand jury also issued true bills

of indictment on each of the charges. "A true bill of indictment is prima facie evidence of probable cause in an action for malicious prosecution." *Whitner v. Duke Power*, 288 S.E.2d 389 (S.C.1982)(*citing Kinton v. Mobile Home Industries*, 262 S.E.2d 727 (1980).) Furthermore, considering the totality of the circumstances, namely that the plaintiff was identified as the perpetrator by the store clerks in both robberies and the robberies were similar to prior robberies of which the plaintiff had been convicted (Def.s' Mem. Supp. Summ. J. Mot. Ex. H), the undersigned concludes that sufficient probable cause existed for the plaintiff's arrest and prosecution. An objective officer could reasonably have believed probable cause existed. *Gomez*, 296 F.3d at 261-262 (4th Cir. 2002). Accordingly, the defendants should be granted summary judgment.

**Qualified Immunity**

Alternatively, the undersigned concludes that the defendants are entitled to qualified immunity. Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. The Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id.* at 818. In determining whether a right is clearly established, the court must look first to the decisions

of the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the highest court of the state in which the case arose. *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir.1999).

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Wiley v. Doory,* 14 F.3d 993 (4th Cir.1994) (internal citations omitted).

In *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

*Torchinsky,* 942 F.2d at 260-261 (citations omitted).

In *Torchinsky*, the court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." *Id*. An official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. *Torchinsky*, 942 F.2d at 261 *(citing Collinson v. Gott*, 895 F.2d 994 (4th Cir.1990)). "Only violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." *Swanson v. Powers*, 937 F.2d 965, 967 (4th Cir. 1991).

As noted above, the plaintiff was arrested pursuant to arrest warrants issued by a magistrate. The Supreme Court has held that when a police officer acts pursuant to a warrant, he is entitled to qualified immunity if he could have reasonably believed that there was probable cause to support the application. *See Malley v. Briggs*, 475 U.S. 335, 341(1986).("Only where the warrant application is so lacking indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost" (citation omitted)). "Obtaining an arrest warrant does not provide per se evidence" that the warrant was proper or that the officer was objectively reasonable in believing it so. *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991). It should be noted, however, that for qualified immunity purposes, the Fourth Circuit certainly finds it "noteworthy [whenever] two different judicial officers in separate proceedings determine[ ] that [an officer] ha[s] demonstrated probable cause to support the arrest," as occurred in this case. *Id.* Likewise,

12

here, the magistrate found probable cause and issued the arrest warrants. Subsequently, the grand jury indicted the plaintiff and he was brought to trial. Further, as noted above the defendant Lt. Watson relied upon the clerks' identification of the perpetrator and the similarities to the robberies which the plaintiff had been convicted of in the past to support his determination that there was probable cause. Based on these facts, the undersigned concludes that the defendants are entitled to qualified immunity.

**State Law Claims**

To the extent that the plaintiff states additional claims under state law (i.e. defamation and harassment), the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

### CONCLUSION

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 23) be GRANTED and the Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED.


Bruce Howe Hendricks
United States Magistrate Judge

July 7, 2008
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).